UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00144-RJC
(3:08-cr-00134-RJC-DSC-4)

| | |
|---|---|
| JULIO CESAR ROSALES LOPEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

## I. BACKGROUND

Julio Cesar Rosales Lopez ("Petitioner") was a member of MS-13 and participated in various criminal activities, including robbery, extortion, obstruction of justice, tampering with witnesses, drug distribution, assaults, and murder. [CR Doc. 1273 at ¶¶ 10, 43: Presentence Investigation Report (PSR)]. Petitioner played a large role in several MS-13 meetings and was a middleman in drug operation. United States v. Fernandez, 526 Fed. App'x 270, 274, 276 (4th Cir. 2013). On December 8, 2007, Petitioner, Alejandro Umana, and Cesar Yoaldo Castillo went to the Las Jerochitas restaurant in Greensboro, North Carolina. [CR Doc. 1075[2] at 390-81; CR Doc.

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:18-cv-00144-RJC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:08-cr-00134-RJC-DSC-4.

[2] Citations to CR Docs. 1072 through 1085 are to the transcript of the criminal trial proceedings.

1078 at 1205]. They got into a dispute with two brothers and a third man about the music that was playing in the jukebox. [CR Doc. 1075 at 394; CR Doc. 1077 at 1188]. Petitioner identified himself as MS-13. [CR Doc. 1075 at 394; see CR Doc. 1077 at 1189]. After one of the victims said, "F***, MS-13," Umana shot all three individuals, killing the two brothers, who were not armed. [CR Doc. 1075 at 394-95; CR Doc. 1077 at 1191-92; CR Doc. 1078 at 1223, 1225]. When the police arrived on the scene, both victims were lying on the ground and neither one had a pulse. [CR Doc. 1077 at 1206]. One victim had a gunshot wound to the head, and the other had a gunshot would to his chest. [Id. at 1215]. One victim was lying flat on his back, while the other victim had his head on that man's abdomen and his feet were at a 90-degree angle. [Id. at 1206]. There was a puddle of blood on the floor. [Id. at 1214].

After the murders, Petitioner called Rony Lopez (Rony), another MS-13 member, and asked him to pick up the group between Charlotte and Greensboro. [CR Doc. 1076 at 776]. Rony picked up the three men in Concord. [Id. at 777]. On the way back to Charlotte, Petitioner talked about the shooting, while Umana played with the gun he used in the murder. [Id. at 778-80]. The men relayed that each victim had been shot once and were just lying there. [Id. at 779-80]. Petitioner was worried because there was a camera in front of the restaurant. [CR Doc. 1075 at 393]. The conversations on the drive back to Charlotte were recorded. [CR Doc. 1076 at 778].

A grand jury indicted Petitioner, along with 25 other gang members, charging him with one count of conspiracy to commit racketeering in violation of 18 U.S.C. § 1962(d) (Count One); one count of accessory after the fact to murder in aid of racketeering and possession of a firearm in relation to a crime of violence and aiding and abetting the same in violation of 18 U.S.C. §§ 2, 3 (Count 26) (based on the events of December 8, 2007); one count of aiding and abetting Hobbs Act robbery for taking controlled substances and the proceeds of illegal trafficking in controlled

2

substances from another in violation of 18 U.S.C. §§ 2, 1951 (Count 28); and one count of Hobbs Act extortion conspiracy relating to extorting drug dealers in violation of 18 U.S.C. § 1951 (Count 58). [CR Doc. 623]. Petitioner proceeded to trial.

In the Court's preliminary instructions to the jury, this Court acknowledge that the jurors may have noticed certain security measures in the courthouse. [CR Doc. 1072 at 22]. The Court explained that these measures were "standard in every case" and should not be considered by the jurors. [Id.]. The Court emphasized that each defendant was presumed innocent until proven guilty and that each defendant, therefore, "starts out with a clean slate." [Id.].

At trial, Rony testified regarding the operation of MS-13, as well as his involvement in the gang. [CR Doc. 1080 at 557-655; CR Doc. 1076 at 660-818]. He described what happened when he picked up Petitioner, Umana, and Castillo the night that Umana murdered the two men in Greensboro. [CR Doc. 1076 at 773-82]. Petitioner also testified that devil horn tattoos were significant to MS-13 "because MS worships the devil. They say that the devil gives them strength. The devil helps them accomplish what they want to accomplish." [CR Doc. 1080 at 568]. During closing arguments, the prosecutor stated:

> Now, I won't got far as to say that MS-13 is devil worshippers. But it's clear that they seek to use the symbolism of the devil, of the beast, la beastia, as you've heard so many times, to intimidate, and to control. That's why [Petitioner] has it right there on his head. So when he chooses to, he can shave his head and show the world that MS-13 is in the league with the devil and you better not cross MS-13.

[CR Doc. 1467 at 22].

After the close of evidence, this Court instructed the jury that they were "the sole judges of the credibility of the witnesses" and could consider whether a witness had any motive or reason for being truthful or untruthful and "whether there appeared from the witness' attitude or conduct

3

any bias, prejudice, or feeling which may cause that person's testimony to be influenced." [CR Doc. 1467 at 9-10]. The Court also instructed the jury that "[t]he testimony of an alleged accomplice and the testimony of one who provides evidence against a defendant as an informer for pay or for benefits in a plea agreement, or for personal advantage or vindication, must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses." [Id. at 12-13]. The Court instructed the jury that it "must decide whether the witness' testimony has been affected by any of those circumstances, or by the witness' interest in the outcome of the case, or by prejudice against the defendant, or by the benefits that the witness has received, either financially or as a result of a plea agreement." [Id. at 12-13]. Finally, this Court instructed the jury that it should "keep in mind that such testimony is always to be received with caution and weighed with great care" and that the jury "should never convict any defendant upon the unsupported testimony of such a witness, unless [the jury believed] that testimony beyond a reasonable doubt." [Id. at 13].

As to Count 26, this Court instructed the jury that to find Petitioner guilty of being an accessory after the fact to murder in aid of racketeering and aiding and abetting the same, the jury had to find: (1) that Umana, or someone aided and abetted by him, committed murder in aid of racketeering with the use of a firearm in relation to a crime of violence; (2) that Petitioner knew of the commission of the crime by the principal and thereafter "received, relieved, comforted, or assisted or aided and abetted someone who did so, the principal;" and (3) that Petitioner did so with the intent to hinder or prevent the principal's apprehension. [CR Doc. 1468 at 50-51: Jury Instructions Tr.]. The Court noted that Petitioner was charged as an accessory after the fact to two separates crimes: (1) murder in aid of racketeering and (2) use of a firearm during and in relation to a crime of violence resulting in death. [Id. at 51]. The Court instructed the jury that it could

4

find Petitioner guilty of Count 26 only if it unanimously found beyond a reasonable doubt that Umana committed one of the underlying offenses and that Petitioner, or someone aided and abetted by Petitioner, was an accessory after the fact to that offense. [Id. at 56]. The jury convicted Petitioner on all counts. [CR Doc. 842 at 1: Jury Verdict]. The found that Petitioner was an accessory after the fact both to murder in aid of racketeering and to use of a firearm in relation to a crime of violence resulting in death. [Id.].

A probation officer prepared a presentence report, recommending that one of the enhancements that Petitioner should receive was a four-level enhancement for being a leader or organizer of criminal activity. [CR Doc. 1273 at ¶ 69]. The probation officer noted that Petitioner led meetings, directed other gang members, and instructed members in the ways and means of MS-13. [Id.]. Petitioner objected to these enhancements, claiming he was not a leader in MS-13. [CR Doc. 1573 at 7: Sentencing Tr.]. The Court overruled the objection, finding that the evidence supporting the enhancement was "overwhelming" and that "[t]he audio and video recordings and trial testimony clearly reflects that he's in charge … [and that] [h]e was brought down to organize this clique in Charlotte." [Id. at 7-8]. The Court sentenced Petitioner to a term of imprisonment of 320 months. [CR Doc. 1423: Judgment].

Petitioner timely appealed, arguing that the evidence was insufficient to support his RICO conviction, that he was prejudiced by the anonymous jury, that this Court erred by failing to instruct the jury as to multiple conspiracies, and that, cumulatively, these errors compelled reversal. Fernandez, 536 Fed. App'x at 274. The Fourth Circuit affirmed his conviction and sentence on May 14, 2013. Id. at 274, 285. The Fourth Circuit noted that this Court had instructed the members of the jury pool that all the security measures that had been taken were standard in every federal case and that the Court did not specifically mention juror anonymity, which was an

5

adequate safeguard to prejudice. Id. at 277-78. On August 10, 2014, Petitioner mailed for filing a motion to vacate under § 2255, which for reasons unknown to the Court was never received or filed by the Clerk. On March 20, 2018, after inquiring into the status of his 2014 motion, Petitioner refiled the motion to vacate.[3] [CV Doc. 1]. The Court ordered the Government to respond to Petitioner's motion. [CV Doc. 2]. After the Government responded, Petitioner moved to obtain the trial transcript and other records in the criminal proceeding in order to reply to the Government's response. [CV Doc. 8]. The Court granted Petitioner's motion, with the exception of Petitioner's PSR, which was to be provided to Petitioner's case manager at Big Sandy. [CV Docs. 13, 15]. After some difficulty getting the records to Petitioner, the records were eventually successfully transmitted on November 19, 2019. The Court allowed Petitioner 45 days from the date of provision of the requested records to file his reply. [CV Doc. 17]. On January 28, 2020, after the expiration of the reply deadline and with Petitioner not having filed his reply, the Court ordered Plaintiff to show cause for his failure to timely reply and advised Plaintiff that, without a timely showing of good cause, the Court would adjudicate his motion to vacate without Petitioner's reply. [CV Doc. 20]. The Court gave Petitioner ten (10) days to respond to the show cause Order. [Id.]. On March 2, 2020, well past the deadline, Petitioner filed a response to the Court's show cause Order in which he contends that he has been denied full control over the records sent by the Court. [CV Doc. 21]. Because Petitioner's response was untimely (and because it appears Petitioner had access to the records he requested since November 2019), the Court will adjudicate Plaintiff's motion vacate without Petitioner's reply.

The matter, therefore, is ripe for adjudication.

---

[3] Because the mail log at Petitioner's place of incarceration, United States Penitentiary at Big Sandy, reflects that, on August 10, 2014, Petitioner mailed a document to this Court that is the same length as the refiled motion to vacate, the Government does not challenge the timeliness of Petitioner's motion. [CV Doc. 3 at 7].

In his motion, Petitioner argues that he received ineffective assistance of trial counsel because his attorney failed to challenge this Court's jurisdiction under the Hobbs Act, did not request an informant jury charge, and did not argue that he could not be convicted as an accessory after the fact to murder. Petitioner contends that his appellate counsel provided ineffective assistance by not arguing on appeal that he should have been acquitted on the accessory drug charge, that there was prosecutorial misconduct, and that the extra security measures deprived him of a fair trial. Petitioner also asserts prosecutorial misconduct as a freestanding claim. Finally, he argues that this Court erred in instructing the jury regarding the aiding and abetting offense and by enhancing his sentence for playing a leadership role in the offense.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a

7

Case 3:18-cv-00144-RJC   Document 22   Filed 05/18/20   Page 7 of 17

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Ci1r. 1999) (quoting Strickland, 466 U.S. at 694)). If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Finally, courts should ordinarily find ineffective assistance of counsel for failure to raise claims on appeal only when "ignored issues are clearly stronger than those presented." Smith v. Robbins, 528 U.S. 288 (2000) (internal citation and quotation omitted). Appellate counsel is not required to assert all non-frivolous issues on appeal. Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). Rather, "it is the hallmark of effective appellate advocacy" to winnow out weaker arguments and to focus on more promising issues. Smith v. Murray, 477 U.S. 527, 536 (1986). Thus, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound

trial strategy." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). Additionally, the petitioner still bears the burden of showing that there is a reasonable probability that but for counsel's failure to raise an issue on appeal, the result of the proceeding would have been different; i.e., that he would have prevailed on appeal. See Robbins, 528 U.S. at 285-86.

>    **1.     Hobbs Act Jurisdiction.**

Petitioner contends that his counsel was ineffective for failing to argue that this Court lacked jurisdiction over the Hobbs Act robbery charge because robbery is a state offense. [CV Doc. 1 at 12-14]. Petitioner's argument is without merit. First, Petitioner's attorney did challenge this Court's jurisdiction under the Hobbs Act. [CR Doc. 1085 at 1813 (arguing that no evidence that the drugs were made out of state was presented)]. Second, any challenge to this Court's jurisdiction under the Hobbs Act was meritless. "Drug dealing is a commercial enterprise and robberies of drug dealers threaten that enterprise; that is enough for federal court to exercise jurisdiction under the Hobbs Act." United States v. Taylor, 754 F.3d 217, 223 (4th Cir. 2014), aff'd, 136 S. Ct. 2074, 2081-82 (2016) (holding robberies targeted illegal drugs and drug proceeds meet the commerce element under the Hobbs Act); see also United States v. Williams, 342 F.3d 350, 355 (4th Cir. 2003) (recognizing the question of effect on interstate commerce is whether "the relevant class of acts has such an impact," not whether one particular offense does). Because Petitioner's Hobbs Act robbery charge and conviction were based on his having aided and abetted the stealing of drug proceeds, a sufficient nexus to interstate commerce was established. Accordingly, Petitioner cannot show deficient performance or prejudice from his counsel's failure to raise this issue. See Strickland, 466 U.S. at 687-88, 694.

9

### 2. Informant Jury Instruction.

Petitioner argues that his counsel was ineffective for failing to request an informant jury instruction. [CV Doc. 1-1 at 2-5, 8-11]. This argument is also without merit. The Court did instruct the jury on this issue, specifically advising the jury that an informant's testimony should be weighed "with greater care and caution than the testimony of ordinary witnesses," that the jury should consider whether the witness' testimony had been affected by any interest in the case or any benefits received, and that the jury should not convict a defendant based on the unsupported testimony of an informant unless the jury believed the testimony beyond a reasonable doubt. [CR Doc. 1467 at 12-13]. There was no reason for Petitioner's counsel to request an instruction that the Court intended to give. Petitioner, therefore, cannot show deficient performance. Furthermore, Petitioner cannot show prejudice. He was convicted after the jury was instructed regarding informant testimony. See Fernandez-Gradis v. United States, No. 3:14-cv-575, 2016 WL 5660346 at *4 (W.D.N.C. 2016) (rejecting the same challenge brought by one of Petitioner's co-defendants).

Again, Petitioner cannot show deficient performance or prejudice from his counsel's failure to raise this issue. See Strickland, 466 U.S. at 687-88, 694.

### 3. Accessory After the Fact to Murder.

Petitioner claims his counsel was ineffective for failing to move for a judgment of acquittal on the charge of being an accessory after the fact to murder and that his appellate counsel should have raised this issue on direct appeal. [CV Doc. 1-1 at 20]. Petitioner contends that he did not have any involvement with the shooting and that he did not know that the victims had died from their injuries after he left the restaurant and was helping Umana escape. [Id. at 20-21 (citing United States v. McCoy, 721 F.2d 473, 475 (4th Cir. 1983))]. First, Petitioner's counsel moved for a

10

Case 3:18-cv-00144-RJC Document 22 Filed 05/18/20 Page 10 of 17

judgment of acquittal at the close of the Government's case and the Court denied the motion. [CR Doc. 1085 at 1812-13; see also id. at 1861 (motion renewed and denied at the close of evidence)]. As such, Petitioner has not shown deficient performance. Second, Petitioner cannot show prejudice because there is no reasonable probability that a motion for a judgment of acquittal would have been granted or that raising this argument would have been successful on appeal. To be convicted as an accessory after the fact to murder, a defendant does not need to know when the death occurred. He must, however, have knowledge that the victim was dead or dying at the time of his decision to help the perpetrator. McCoy, 721 F.2d at 474-75. Here, the evidence showed that Petitioner and Umana were at a restaurant when Umana shot one man in the head and one man in the chest and the men collapsed to the floor, one lying on top of the other, in a pool of blood. [CR Doc. 1075 at 394-95; CR Doc. 1077 at 1191-92, 1206, 1214-15]. The jury also heard evidence from discussions of the incident after Rony picked the men up in Concord following the murders. [CR Doc. 1076 at 776-80]. Because this evidence was sufficient for the jury to conclude that Petitioner knew that the victims were dead or dying at the time that Petitioner aided Umana in escaping, see McCoy, 721 F.2d at 475, Petitioner cannot show prejudice.

The Petitioner's claim on this ground will, therefore, be denied.

### 4. Prosecutorial Misconduct.

Petitioner argues that his counsel was ineffective for failing to object to the Government's closing argument related to devil worshipping and for failing to raise the issue on appeal.

To establish prosecutorial misconduct, a defendant must demonstrate: (1) that the conduct of the prosecutor was improper, and (2) that the improper conduct prejudicially affected his substantial rights so as to deprive him of a fair trial. See United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993). "[I]t 'is not enough that the prosecutors' remarks were undesirable or even

universally condemned." Darden v. Wainwright, 477 U.S. 168, 180 (1986). Improper remarks by a prosecutor violate the Constitution only if the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). Courts should consider the context of the entire record when examining the challenged comments. Bennett v. Stirling, 842 F.3d 319, 323 (4th Cir. 2016).

Under these standards, Petitioner's claim that his counsel was ineffective because he did not object to the Government's closing argument is without merit. Petitioner argues that the Government's closing arguments were improper because the prosecutor implied that Petitioner was a devil worshipper. [See CV Doc. 1-1 at 15]. The prosecutor, however, did not state that the defendants were devil worshippers. Rather, he stated that he would not go so far as to say that MS-13 members worshipped the devil. [CR Doc. 1467 at 22]. The prosecutor also stated that the defendants used the symbolism of the devil to intimidate and control others. [Id.]. Further, the prosecutor's statements were supported by the evidence, which included Rony's testimony that MS-13 worshipped the devil, as well as the evidence that MS-13 members used hand signs and tattoos that referenced the devil. [See CR Doc. 1080 at 568, 571]. As such, Petitioner cannot show that the prosecutor's comments were improper.

Additionally, given the overwhelming evidence against Petitioner and that the remarks were supported by the evidence, he cannot show that there was a reasonable probability that a challenge to these remarks would have succeeded on appeal. Because Petitioner cannot show deficient performance or prejudice, this claim will also be denied.

### 5. Extra Security Measures.

Petitioner argues that his appellate counsel was ineffective for failing to challenge the extra security measures used at trial. [CV Doc. 1-1 at 5-7]. Petitioner contends that the presence of a

"courtroom full of Marshals" made him appear dangerous and prejudiced the jurors. [CV Doc. 1-1 at 7]. A district court has broad discretion in determining what security measures are necessary during a trial. United States v. Darden, 70 F.3d 1507, 1533 (8th Cir. 1995). Here, there was ample need for increased security given the nature of the crimes of which the defendants were accused, which included witness intimidation. The need for security was high enough that an anonymous jury was selected, a safeguard that the Fourth Circuit later approved. See Fernandez, 526 Fed. App'x at 278. Further, the Court instructed the jury that the security measures were routine and should not be considered as evidence of the defendants' guilt. Petitioner, therefore, has not shown that the presence of additional U.S. Marshals was improper or inherently prejudicial. See Holbrook v. Flynn, 475 U.S. 560, 570-72 (1986) (holding presence of four uniformed state troopers was not inherently prejudicial); United States v. Greenwell, 418 F.2d 846, 847 (4th Cir. 1969) (rejecting defendant's claim of prejudice from the presence of uniformed officers in the courtroom). Petitioner has also failed to offer any evidence that he was actually prejudiced by the presence of the marshals.

Because Petitioner has failed to meet his burden to show that counsel was deficient for failing to raise this issue on appeal or that there is a reasonable probability that his appeal would have been successful had counsel raised the issue, Petitioner's claim on this ground will be denied. See Robbins, 528 U.S. at 285-86, 288.

In sum, because Petitioner cannot show deficient performance or prejudice on any ground for relief, his ineffective assistance claims will be dismissed.

**B. Prosecutorial Misconduct**

Petitioner also asserts a freestanding claim of prosecutorial misconduct. A § 2255 motion is not a substitute for a direct appeal. See United States v. Frady, 456 U.S. 152, 165 (1982). Claims

13

of error that could have been raised on direct appeal, but were not, are procedurally barred unless the petitioner shows both cause for the default and actual prejudice or demonstrates that he is actually innocent of the offense. See Bousely v. United States, 523 U.S. 614, 621-22 (1998); United States v. Bowman, 267 Fed. App'x 296, 299 (4th Cir. 2008). "[C]ause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). Futility does not establish cause to excuse procedural default. See Whiteside v. United States, 775 F.3d 180, 185 (4th Cir. 2014) (en banc) (noting the "alleged futility cannot serve as 'cause' for procedural default in the context of collateral review").

To show actual prejudice, a petitioner must demonstrate that errors in the proceedings "worked to his *actual* and substantial disadvantage" and were of constitutional dimension. See Frady, 456 U.S. at 170. To show actual innocence, a petitioner must demonstrate that he "has been incarcerated for a crime he did not commit." United States v. Jones, 758 F. 3d 579, 584 (4th Cir. 2014). Actual innocence is based on factual innocence and "is not satisfied by a showing that a petitioner is legally, but not factually, innocent." See Mikalajunas, 186 F.3d at 494.

Petitioner's argument that the Government committed prosecutorial misconduct during closing arguments by inferring that Petitioner is a devil worshipper is procedurally barred because he did not raise the issue on direct appeal. While Petitioner argues that his appellate counsel was ineffective for failing to raise this issue on appeal, the Court already determined that Petitioner's appellate counsel was not. As such, there is no cause. Further, Petitioner cannot show prejudice because the evidence shows that the prosecutor's argument was supported by the record and was not improper. Petitioner provides no evidence to support his claim of innocence. [See CV Doc.

14

1-1 at 18]. Because Petitioner has not shown cause, prejudice, or actual innocence to excuse his procedural default, this claim for relief based on prosecutorial misconduct will also be dismissed.[4]

### C. The Court's Aiding and Abetting Instruction

Petitioner argues that the Court erred in not instructing the jury that he need advance knowledge of the murder relative to the charges of aiding and abetting as an accessory after the fact to murder in aid of racketeering and the use of a firearm in furtherance of a crime of violence. [CV Doc. 1-1 at 8-11]. Citing Rosemond v. United States, 572 U.S. 65 (2014), Petitioner claims he was deprived of a fair trial because the Government never proved that he aided and abetted a planned murder at the restaurant with a firearm. [Id. at 11]. Petitioner argues he did not have the requisite intent to commit an offense, nor did he carry a gun. [Id. at 9-10].

Petitioner's claim is procedurally barred. He did not raise this issue on direct appeal, and he does not argue that he can establish cause and prejudice for this failure or that he can show actual innocence. See Bousley, 523 U.S. at 621-22. Even if this argument were not procedurally barred, it is without merit. Under 18 U.S.C. § 3, it is a crime for someone to assist an offender who has committed a crime "in order to hinder or prevent his apprehension, trial or punishment." There is no requirement of advance knowledge that a crime will be committed. Further, Petitioner was not charged with aiding and abetting Umana in committing the murder. Rather, he was charged with aiding and abetting Umana by helping Umana after Umana committed the murder. Rosemond does not apply. It involved aiding and abetting the use of a firearm during a drug trafficking offence and required a defendant to have advance knowledge that an accomplice would use or carry a firearm during a drug trafficking offense. Rosemond, 134 S. Ct. at 1243.

---

[4] Additionally, even if Petitioner had not procedurally defaulted this claim, it also fails on the merits. The prosecutor's comments were not improper, and Petitioner cannot show that they prejudicially affected his substantial rights so as to deprive him of a fair trial. See Mitchell, 1 F.3d at 240.

15

As such, it was proper to omit an instruction that Petitioner had to have advanced knowledge that Umana was going to murder someone. This claim will be dismissed.

### D. Leadership Enhancement at Sentencing

Petitioner challenges the guidelines calculation relative to the leadership enhancement. This claim is not cognizable under § 2255 and is procedurally barred for failure to raise on direct appeal. Petitioner claims he is "actually innocent" of his sentence because the Court should not have imposed an enhancement for his leadership role in the offense. [CV Doc. 1-1 at 22]. Citing Alleyne v. United States, 570 U.S. 99 (2012), Petitioner argues that the facts to support this enhancement should have been found by a jury. [Id.]. This Court lacks authority under § 2255 to review advisory Guidelines calculation errors because they do not amount to fundamental defects. See United States v. Foote, 784 F.3d 931 (4th Cir. 2015). This argument also fails because Petitioner did not raise it on direct appeal and it is, therefore, procedurally barred. See Bousley, 523 U.S. at 621-22. Additionally, Petitioner has presented no evidence of actual innocence. Finally, even if the Court could reach the merits of Petitioner's claim, there is overwhelming evidence of Petitioner's leadership role in the offense. The Court will, therefore, also dismiss this claim.

### E. Petitioner's Supplement to His § 2255 Motion.

Petitioner supplemented his § 2255 motion, arguing that he had "become aware of several jurisdictional and actual innocence challenges to his RICO conviction," which "may be raised at any time during the proceedings." [CV Doc. 11 at 1 (citing McQuiggin v. Perkins, 133 S. Ct. 1924 (2013))]. In his supplement, Petitioner asserts nine additional grounds for ineffective assistance of counsel and a claim for denial of counsel. The Court has reviewed these additional grounds for relief asserted by Petitioner and finds them to be procedurally barred and/or without merit.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: May 18, 2020

Robert J. Conrad, Jr.
United States District Judge